# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF OKLAHOMA

MICHAEL LEE EDWARDS,        )
                                           )
        Petitioner,          )
                                           )
vs.                                    )          Case No. CIV-16-1423-M
                                           )
TRACY MCCOLLUM, Warden,     )
                                           )
        Respondent.     )
                                           )

## MEMORANDUM OPINION

Petitioner, Michael Lee Edwards, a state court prisoner appearing pro se, has filed a petition for writ of habeas corpus seeking relief pursuant to 28 U.S.C. § 2254 (Doc. 1). Petitioner challenges the convictions entered against him in Oklahoma County District Court Case No. CF-2012-2836. In that case, Petitioner was found guilty by jury of two counts of lewd acts with a child under sixteen. Petitioner received a life sentence on each count, and the trial court ordered the sentences to be served concurrently (O.R. I, 50-52; O.R. II, 258-59, 276-78; J. Tr. IV, 142; S. Tr. 19). Petitioner appealed his convictions to the Oklahoma Court of Criminal Appeals (hereinafter "OCCA"). The OCCA affirmed in an unpublished summary opinion, Edwards v. State, No. F-2014-1022 (Okla. Crim. App. Dec. 15, 2015).

Petitioner raises eight[1] grounds for relief, all of which were presented to the OCCA in his direct appeal. Respondent has responded to the petition (Doc. 7). No reply has been filed.[2] For the reasons set forth herein, the Court finds that Petitioner is not entitled to habeas relief.[3]

## I. Facts.

On April 25, 2012, four-year-old A.S. approached her mother, Bethany Sing, and said, "Hey, guess what? . . . Papa can make snot come out of his bottom." A.S. was very calm and nonchalant, obviously too young to realize the import of her statement (J. Tr. II, 143, 151-52). The conversation, as told by Mrs. Sing, continued as follows:

---

[1] Although Petitioner has included a ninth ground for relief relating to the length of his sentence, he acknowledges that his sentence is within the statutory limits and he expressly waives review of the claim (Pet. at 27, 30). See Dennis v. Poppel, 222 F.3d 1245, 1258 (10th Cir. 2000) (acknowledging that sentence challenges are not cognizable in federal habeas proceedings and that "review of a sentence ends once [the court] determine[s] the sentence is within the limitation set by statute").

[2] Although Petitioner indicated in his petition that he might seek an expansion of the record and file a brief when the record was complete (Pet. at 30), Respondent filed the state court record on April 24, 2017 (Doc. 9), and Petitioner has made no objection to the record nor has he filed any additional pleadings beyond his petition.

[3] Petitioner asserts that he is innocent and he requests an evidentiary hearing and the appointment of counsel "[i]f this Federal Court has any reservations regarding [his] guilt or innocence . . ." (Pet. at 16, 30). In his Ground Seven, Petitioner raises an insufficient evidence claim. The OCCA denied relief on this claim and the Court has reviewed the denial in light of AEDPA deference. Having reviewed the evidence and found that no relief is warranted on Ground Seven, the Court additionally finds that Petitioner is not entitled to an evidentiary hearing or the appointment of counsel. See Jones v. Warrior, 805 F.3d 1213, 1222 (10th Cir. 2015) (denying an evidentiary hearing under Cullen v. Pinholster, 563 U.S. 170 (2011), because a petitioner failed to satisfy 28 U.S.C. § 2254(d)); Anderson v. Att'y Gen. of Kan., 425 F.3d 853, 859 (10th Cir. 2005) ("[A]n evidentiary hearing is unnecessary if the claim can be resolved on the record."); Swazo v. Wyo. Dep't of Corr., 23 F.3d 332, 333 (10th Cir. 1994) (the appointment of counsel in § 2254 cases is discretionary).

I [Mrs. Sing] said, Really?  That's weird.  And she [A.S.] said, Yeah, he's silly.  He's silly sometimes. And I said, Oh, really, why would he do that?  And she goes, I don't know, . . . he was just making snot come out of his bottom.  And I said, Well, did you try to go the bathroom with him? . . . And she said, no, that we were outside in the trees.  It was when we were on the tractor.  And I said, So was he peeing outside?  She goes, No.  Was he pooping outside?  No.  And then I asked her then, Was he, you know, peeing?  Was he pooping?  She said, No.  And she specifically said, Poop is brown and pee is yellow.  And I said, So what was it?  What color was it?  And she said, White.  And I was kind of startled and I kind of walked away and she followed me and she said it was when he was kissing and licking all over me - - all over my body.  And I was, like, Oh, okay.

So I sat there for another minute and I said, Well, when you say that he was doing that, when you say that he was kissing and licking all over your body, where was that?  And she said - - she pulled down her pants and touched her vagina and she said, Right here and, when he puts his tongue in there, it hurts and I have to tell him to stop and he did.  And I asked her if she touched him and she said, I just held his bottom.

(id. at 152-53).  The "Papa" A.S. was referring to was Petitioner, her step grandfather (id. at 143-44, 153-54).

Shortly after A.S. made this disclosure, her parents took her to Children's Hospital (id. at 155-57).  Lauren Donaldson, a physician's assistant at the hospital, conducted a forensic examination of A.S. (id. at 88, 91).  Ms. Donaldson made a finding of "probable sexual abuse by history"[4] and referred the matter to the Department of Human Services (id. at 99, 102).  When Ms. Donaldson asked A.S. why she was at the hospital, A.S. told her:

He licked my bottom, he spit snot out of his bottom, it went into the grass.  It was white.  He started to do it on my knee.  I touched him on his bottom.  He

---

[4] Ms. Donaldson did not find any injuries on A.S.  Given the alleged sexual conduct, Ms. Donaldson was not surprised by the absence of injuries (J. Tr. II, 91-95, 104, 131-32).

licked my bottom way inside it and it hurt. And he told me not to tell anybody.

(id. at 96).

While at the hospital, A.S. was interviewed by Sheliah Melfah, a social service specialist. The interview was videotaped and played for the jury (J. Tr. III, 168, 172, 175; State's Exhibit 5). In the interview, A.S. once again relayed what happened to her when she was riding the tractor with Petitioner. Using two drawings, A.S. identified the private parts of a boy and a girl. A.S. used the word "butt" or "bottom" to describe her lower private parts (State's Ex. 5 at 9:00) and "bottom" to describe a male's penis or butt (id. at 10:28). In the thirty-five minute interview, A.S. made the following statements:

- "If we tell her [Nana, A.S.'s grandmother and Petitioner's ex-wife] what we did, she won't let us ride the tractor" (id. at 4:51);

- When asked if she had seen a boy's bottom before, A.S. said, "Papa let me touch his" (id. at 14:33);

- When asked to tell about Papa's bottom, A.S. said, "Well, it feels like it's soft, but it doesn't . . . and it spits out snot when I wiggle it" (id. at 14:40);

- "We stopped it [the tractor] and then we started the touching . . ." (id. at 16:40);

- When shown the anatomically correct male doll and asked to show what happened on the tractor, A.S. pulled down the pants on the doll, pulled out the penis, and said, "I touched his bottom." When asked to show how she touched it, she put both hands on the doll's penis and moved her hands around it (id. at 19:20);

- When asked what color the snot was, A.S. said, "It was white." A.S. said the snot went in the grass. She also said that the snot came from his bottom, and when asked to show on the doll where the snot came from, she pointed to the doll's penis (id. at 20:00);

4

- A.S. said, "He started to lick my bottom. . . . He licked it." When asked to show how he licked it, A.S. lifted up the dress on the girl doll, pointed to the doll's vaginal area, and said, "He licked right there." She added, "And he went into my bottom and it hurted." She said he licked her with his tongue (id. at 20:35); and

- "He told me not to tell nobody. . . . If I told Nana, she wouldn't let us do it" (id. at 27:20).[5]

A.S. testified at preliminary hearing via closed circuit television.[6] A.S. testified that Petitioner licked her "pee-pee" in the field when they were driving the tractor (P.H. Tr. 5/10/13, 11-13). She also testified that she touched Petitioner's "pee-pee" and that it "spit snot out" (id. at 15-16). A.S. said the snot was "nasty," that it went on the ground, and that it was brown and green (id. at 16-17, 23). A.S. testified that Petitioner "told [her] not to tell" (id. at 18).

Although A.S. took the witness stand at trial, she was unable to testify (J. Tr. II, 140-42). As described by the trial court, "when [A.S.] was called [as a witness], she immediately began to cry. She shook her head a couple of times to [the prosecutor's] questions. Anyway, she just clammed up, bottom line, with tears in her eyes" (id. at 212). Arrangements were made to take A.S.'s testimony by video deposition in chambers; however, A.S. was unable to testify in that setting either. A.S. was subsequently declared

---

[5] A.S. made additional statements in her interview; however, the ones listed here are representative of what she told (and showed) Ms. Melfah about what Petitioner did to her.

[6] Pursuant to Okla. Stat. tit. 12, § 2611.7(A) (2011), A.S. was allowed to testify by alternative means (M. Tr. 2/4/13, 46). An alternative method of testifying is allowed if the court "finds by clear and convincing evidence that the child would suffer serious emotional trauma that would substantially impair the child's ability to communicate with the finder of fact if required [(1)] to testify in the open forum; and . . . [(2)] to be confronted face-to-face by the defendant."

unavailable and her preliminary hearing testimony was read to the jury (J. Tr. II, 212-27; J. Tr. III, 5-30; Court's Ex. 1).

In addition to A.S.'s statements and testimony about what Petitioner did to her, A.S. exhibited changes in her behavior after the disclosure.[7]  Mrs. Sing testified that A.S. is "afraid of everything," has trouble sleeping, cries sometimes at bedtime, and "wishes she could be the girl down the street . . . because they didn't have bad things happen to them." When A.S. plays with her dolls, she takes their clothes off and licks their private parts and she has taught her sister to do the same.  Once Mrs. Sing saw A.S. try to lick her sister (J. Tr. II, 162-63).  A.S. is afraid of tractors.  In the fall following the disclosure, A.S. was very upset and did not want to attend her school field trip to the Orr Family Farm.  Her mother learned that A.S.'s emotions were fueled by her fear that a tractor would be there and she would have to ride it (id. at 163-64).  A.S.'s relationship with her grandmother, Petitioner's ex-wife, is almost nonexistent.  A.S. refuses to see her grandmother and she is in fear for her sister's safety when she goes to see her (id. at 164-65).[8]  A.S. has been diagnosed with Posttraumatic Stress Disorder and has been in counseling since June 2012 (J. Tr. II, 167; J. Tr. III, 159-160).

---

[7] Although A.S. had been at Petitioner's house and ridden the tractor with him the day before her disclosure, A.S. never said the lewd acts occurred on that particular day (J. Tr. II, 158). A.S. had been exhibiting some behaviors before the disclosure which might have been an indication that the abuse occurred earlier and/or on more than on occasion (J. Tr. II, 96-99, 148-50, 158-62).  A.S. liked to "hang out" at Petitioner's house and had frequent contact with him and her Nana before the disclosure (id. at 145-47).

[8] Mrs. Sing testified that the strain on their relationship stems from Petitioner telling A.S. not to tell Nana what happened or Nana would get mad at her (J. Tr. II, 164).  .

Petitioner testified at trial and denied that he did any of the things A.S. said he did.[9] Petitioner implied that A.S.'s disclosure may have been the result of her coming in on him while he was going to the bathroom. Petitioner testified that on the day prior to the disclosure, he was preparing for a colonoscopy and A.S. walked into the bathroom three times while he was sitting on the toilet (J. Tr. IV, 32-38). On cross-examination, however, Petitioner admitted that his penis was not exposed when A.S. came into the bathroom (id. at 70).

Additional facts will be referenced herein as they relate to the individual grounds for relief raised by Petitioner.

## II. Standard of Review.

Because the OCCA addressed the merits of all of Petitioner's grounds for relief, the Court reviews them in accordance with the standard of relief set forth in 28 U.S.C. § 2254(d). Section 2254(d) requires Petitioner to show that the OCCA's adjudication of his claims either

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[9] Petitioner also denied making statements about A.S. when he was arrested (J. Tr. IV, 72). An Oklahoma City Police Officer testified that when she transported Petitioner downtown, he was very nervous and said, "The only one that would accuse me of doing anything is [A.S.]." Petitioner also told the officer that A.S. had walked in on him using the bathroom several times in the past (J. Tr. II, 202-03).

See Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (acknowledging that "[t]he petitioner carries the burden of proof").  The focus of this statutory provision is on the reasonableness of the OCCA's decision.  "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable–a substantially higher threshold."  Schriro v. Landrigan, 550 U.S. 465, 473 (2007).  In other words, "[i]t is not enough that [this] court, in its independent review of the legal question, is left with a firm conviction that the [OCCA] was erroneous."  What is required is a showing that the OCCA's decision is "objectively unreasonable."  Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003) (internal quotation marks and citation omitted).

The Supreme Court has repeatedly acknowledged that Section 2254(d) "'erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court,'" and that "[i]f [it] is difficult to meet, that is because it was meant to be."  White v. Wheeler, 577 U.S. ___, 136 S. Ct. 456, 460 (2015) (quoting Burt v. Titlow, 571 U.S. ___, 134 S. Ct. 10, 16 (2013)); Harrington v. Richter, 562 U.S. 86, 102 (2011).  Section 2254(d) "stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings."  Richter, 562 U.S. at 102.  What remains, then, is a very narrow avenue for relief, one that permits relief only "*where there is no possibility* fairminded jurists could disagree that the [OCCA's] decision conflicts with [the Supreme] Court's precedents."  Id. (emphasis added).

> Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. As a condition for obtaining

habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id. at 102-03 (citation omitted).

## III. Analysis.

### A.     Grounds One and Two:    Evidentiary Rulings.

In his Grounds One and Two, Petitioner presents challenges to the trial court's evidentiary rulings.  For the following reasons, the Court finds that the OCCA was not objectively unreasonable in denying relief on these claims.

When a petitioner challenges the admission of evidence, "the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief" where the admitted evidence "is so unduly prejudicial that it renders the trial fundamentally unfair."  Payne v. Tennessee, 501 U.S. 808, 825 (1991).  Undefined by specific legal elements, this standard obliges the court to "'tread gingerly'" and "exercise 'considerable self-restraint.'"  Duckett v. Mullin, 306 F.3d 982, 999 (10th Cir. 2002) (quoting United States v. Rivera, 900 F.2d 1462, 1477 (10th Cir. 1990)).  Relief is warranted in only "the most serious cases, which truly shock the conscience as well as the mind."  Rivera, 900 F.2d at 1477 (internal quotation marks and citation omitted).

An alleged evidentiary error is not viewed in isolation, but is considered in light of the entire proceeding.  As acknowledged in Rivera, "a fundamental-fairness analysis is heavily dependent upon the peculiar facts of an individual trial."  Id.  Thus, "inquiry into the fundamental fairness of the trial requires an examination of the entire proceedings,

including the strength of the evidence against the defendant." Hanson v. Sherrod, 797 F.3d 810, 843 (10th Cir. 2015).

## Ground One

In Ground One, Petitioner asserts that he was denied due process by the admission of hearsay evidence. Petitioner claims, as he did on direct appeal, that A.S.'s statements to her mother and to Ms. Melfah at Children's Hospital (State's Ex. 5) should not have been admitted because the trial court did not make a record finding that the statements were corroborated as required by Okla. Stat. tit. 12, § 2803.1(A)(2)(b) (2011).[10]

Okla. Stat. tit. 12, § 2803.1 (2011) addresses the admissibility of statements made by children who have been sexually abused. Before a statement may be admitted, § 2803.1(A)(1) requires the trial court to hold a hearing outside the presence of the jury to determine if "the time, content and totality of circumstances surrounding the taking of the statement provide sufficient indicia of reliability so as to render it inherently trustworthy." Section 2803.1(A)(2)(a) additionally requires the child to testify or be available to testify.

_____

[10] See Brief of Appellant at 16-22, a copy of which is attached to the response as Exhibit 1. In his statement of supporting facts, Petitioner's complaint appears to be that the trial court admitted hearsay evidence without first holding a hearing as mandated by Okla. Stat. tit. 12, § 2803.1(A)(1) (2011). Petitioner makes no mention of Mrs. Sing, Ms. Melfah, or the issue of corroboration (Pet. at. 6). But the record reflects that a § 2803.1 hearing was held (J. Tr. II, 36-50), and therefore if that was the extent of Petitioner's claim, it would be easily disposed of. However, Petitioner does state that his Ground One was fully exhausted in the first proposition of his direct appeal (Pet. at 6), and on direct appeal, Petitioner complained about the admission of A.S.'s hearsay statements without a finding of corroboration. Therefore, applying liberal construction to Petitioner's pleading, the Court construes Petitioner's Ground One to be the same claim he raised on direct appeal. See Sines v. Wilner, 609 F.3d 1070, 1074 (10th Cir. 2010) ("Pro se pleadings are to be construed liberally.").

If the child is unavailable to testify, then § 2803.1(A)(2)(b) provides that the "statement may be admitted only if there is corroborative evidence of the act."

In the present case, the trial court conducted a reliability hearing and determined that A.S.'s statements to her mother and Ms. Melfah were admissible (J. Tr. II, 36-50). At the time of the hearing, it was believed that A.S. would testify at trial, and therefore, the trial court made no additional finding regarding the corroboration required for an unavailable witness. Because A.S. was ultimately not able to testify at trial, in person or by alternative means, the trial court subsequently declared her unavailable, triggering the corroboration provision of § 2803.1(A)(1)(b); however, the trial court made no record finding as to corroboration (J. Tr. II, 140-42, 212-27; J. Tr. III, 5). A.S.'s preliminary hearing testimony was read to the jury, both Mrs. Sing and Ms. Melfah testified as to A.S.'s statements, and the video of A.S.'s interview with Ms. Melfah was played for the jury. Petitioner made no objection at trial to the admission of A.S.'s statements based on the absence of corroboration.

Because Petitioner failed to object at trial, the OCCA reviewed Petitioner's Ground One for plain error. Edwards, No. F-2014-1022, slip op. at 2. The OCCA found no plain error because A.S.'s statements to her mother and Ms. Melfah were corroborated by A.S.'s preliminary hearing testimony and by testimony about the behavioral changes A.S. experienced as a result of the abuse. Id. at 2-3.

Applying AEDPA deference, the Court finds that the OCCA's decision is not an objectively unreasonable determination. Although A.S.'s preliminary hearing testimony

was not identical to her statements to her mother, Ms. Melfah, and Ms. Donaldson,[11] she

clearly testified that Petitioner licked her "pee-pee" (J. Tr. III, 11-13) and that she touched

Petitioner's "pee-pee" (id. at 15-16). A.S.'s statements to her mother and Ms. Melfah were

additionally corroborated by the behaviors A.S. exhibited after her disclosure. Particularly

significant are A.S.'s reenactment of the sexual abuse with her dolls, her fear of tractors,

and the break in her once close relationship with her grandmother, Petitioner's ex-

wife (J. Tr. II, 145-46, 162-65). Given this corroborating evidence, the Court concludes

that Petitioner was not denied a fundamentally fair trial by the admission of A.S.'s hearsay

statements.

## Ground Two

In Ground Two, Petitioner asserts that he was denied a fundamentally fair trial by

the admission of A.S.'s preliminary hearing testimony along with her statements to her

mother, Ms. Melfah, and Ms. Donaldson. Because this evidence allowed the jury to hear

A.S.'s allegations of abuse four times, Petitioner asserts that it was improper bolstering,

prejudicial, and cumulative. Again, because Petitioner failed to object at trial, the OCCA

reviewed Petitioner's Ground Two for plain error. Edwards, No. F-2014-1022, slip op. at

3. With the following reasoning, the OCCA found "no error, plain or otherwise":

> We have recognized that § 2803.1 essentially allows the State to present its
> principal witness's information more than once. Folks v. State, 2008 OK
> CR 29, ¶ 14, 207 P.3d 379, 383. In most cases, the primary purpose in
> presenting such statements made *outside* the courtroom is to enhance the
> reliability of ones made *in* the courtroom. Indeed, the "consistent repetition"

---

[11] A.S.'s statements to Ms. Donaldson (J. Tr. II, 96), which were consistent with what A.S.
told her mother and Ms. Melfah, were admissible pursuant to Okla. Stat. tit. 12, § 2803(4) (2011).

of the information is one of the factors the trial court considers in deciding whether the hearsay is trustworthy enough to be admitted. 12 O.S.2001, § 2803.1(A)(1).

Id.

Unlike his Ground One challenge to the admission of A.S.'s statements to her mother and Ms. Melfah, Petitioner's Ground Two does not challenge the admission of evidence on hearsay grounds. Petitioner's argument here is that all of the evidence together, A.S.'s preliminary hearing testimony and her statements to three others, was too much. Citing a 2008 OCCA decision, Petitioner contends that a better procedure could have been used,[12] but regardless, Petitioner's ultimate contention is that the introduction of all of this evidence made his trial unfair.

The OCCA was not objectively unreasonable in denying Petitioner relief on this claim. A.S.'s statements to her mother, Ms. Melfah, and Ms. Donaldson were significant and relevant. A.S. made a spontaneous disclosure to her mother and her mother responded immediately by taking A.S. to the hospital to be checked out. A.S.'s statements to Ms. Melfah and Ms. Donaldson were made at the hospital that same day. The statements, made by a four-year-old who clearly did not realize that what Petitioner did to her was wrong, were fresh and consistent. They were an integral part of the State's burden of proof

---

[12] Quoting Folks v. State, 207 P.3d 379 (Okla. Crim. App. 2008), which the OCCA cited in its denial of relief, Petitioner claims that the OCCA has adopted a procedure with respect to child witness statements that should have been followed in his case (Pet. at 8). This is incorrect. While the OCCA referenced the procedure in Folks, it did not adopt it. Folks, 207 P.3d at 383. In Folks, the OCCA held that "[w]hether the recorded statement bolstered the State's case was for the jury's determination of the weight and credibility of the testimony." Id.

and relevant for the jury to assess the A.S.'s credibility and trustworthiness. As the statements and testimony were properly admitted, Petitioner's Ground Two lacks merit.

## Conclusion

For the foregoing reasons, the Court concludes that Petitioner is not entitled to relief on his Grounds One and Two. Grounds One and Two are therefore denied.

### B. Ground Three: Prosecutorial Misconduct.

Petitioner's third ground for relief is a claim of prosecutorial misconduct. Petitioner asserts that the prosecutors acted inappropriately by vouching for A.S.'s credibility and seeking sympathy for her and her family. Petitioner asserts that these improper actions occurred in the examination of witnesses and in closing argument. Finding "no misconduct on the part of the prosecutor which was likely to have affected the outcome," the OCCA denied Petitioner relief on this claim. Edwards, No. F-2014-1022, slip op. at 3-5.

"Prosecutors are prohibited from violating fundamental principles of fairness, which are basic requirements of Due Process." Hanson, 797 F.3d at 843. Therefore, when a petitioner alleges prosecutorial misconduct, the question is whether the prosecutor's actions or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). A prosecutor may affect the fairness of a trial if he or she vouches for the credibility of witnesses or seeks a guilty verdict based on sympathy for the victim. See Hanson, 797 F.3d at 841 ("We do not condone prosecutorial remarks encouraging the jury to allow sympathy to influence its decision.") (quotation marks and citation omitted); Thornburg v. Mullin, 422 F.3d 1113, 1132 (10th Cir. 2005) ("Argument or evidence is impermissible vouching

only if the jury could reasonably believe that the prosecutor is indicating a personal belief in the witness' credibility, either through explicit personal assurances of the witness' veracity or by implicitly indicating that information not presented to the jury supports the witness' testimony.") (quotation marks and citation omitted). Evaluating the alleged misconduct in light of the entire proceeding, the reviewing court must determine "whether the jury was able to fairly judge the evidence in light of the prosecutors' conduct." Bland v. Sirmons, 459 F.3d 999, 1024 (10th Cir. 2006).

## Vouching

Petitioner's first complaint is that the prosecutor's questions to three of its witnesses constituted impermissible vouching of A.S.'s credibility. With respect to Ms. Donaldson, the physician's assistant who examined A.S., Petitioner takes issue with the following testimony: "So when a child comes in and tells me that some, you know, sexual acts have happened, that is enough evidence to say that sexual abuse occurred, even with a normal physical exam" (J. Tr. II, 95). Although A.S. had no injuries, Ms. Donaldson rendered a diagnosis of "probable sexual abuse by history" (id. at 91, 99). This statement by Ms. Donaldson was a portion of her testimony explaining her diagnosis and why in her over 500 forensic examinations, she has only seen physical injuries a handful of times (id. at 89, 92-96).

In denying Petitioner relief on this claim, the OCCA noted that no objection to the testimony was made. In addition, the court found that the matter was cleared up on cross-examination when Ms. Donaldson acknowledged that from her physical examination of A.S. should could not "say definitively this did or did not happen" (J. Tr. II. 117). Edwards,

15

No. F-2014-1022, slip op. at 3-4. This is an objectively reasonable determination. In addition to the clarification made on cross-examination, the Court additionally notes that even on direct examination Ms. Donaldson acknowledged that her diagnosis of A.S. was not definitive but just a part of the process used to determine if A.S. was actually sexually abused (J. Tr. II, 99-100) (Ms. Donaldson discussing the need of a forensic interview and further investigation by the police). Therefore, viewing Ms. Donaldson's testimony in its entirety, the Court cannot conclude that Petitioner was denied a fair trial.

Petitioner's next complaint is with the testimony of Ms. Melfah, the forensic interviewer. Petitioner takes issue with Ms. Melfah's testimony about coaching. After asking Ms. Melfah what coaching meant and the signs she looked for to determine if a child had been coached, the prosecutor asked Ms. Melfah if she believed A.S. had been coached. Ms. Melfah said no (J. Tr. III, 173-74). Petitioner additionally complains about testimony Ms. Melfah gave in response to questions posed by defense counsel on cross-examination (id. at 179-83). The OCCA found that the prosecutor's questions about coaching were proper. Edwards, No. F-2014-1022, slip op. at 4. As for Petitioner's argument about Ms. Melfah's cross-examination, the OCCA stated that it was "not well taken" because the prosecutor had no involvement in it. Id. ("they [Ms. Melfah's answers] were elicited by defense counsel, not the prosecutor, and we find nothing improper about them in any event").

The OCCA's determination of this claim is not objectively unreasonable. The issue of coaching was relevant. Before the videotape of Ms. Melfah's interview with A.S. was introduced and played for the jury, the prosecutor asked Ms. Melfah about how forensic

interviews were conducted. As a part of this questioning, the prosecutor asked why it is "important to ask open/ended questions." Ms. Melfah responded, "It's to reduce suggestibility and to determine whether the child has been coached" (J. Tr. III, 171). The questions which Petitioner complains about were follow-up questions to this answer. While the questions undoubtedly concerned A.S.'s believability, they did not amount to impermissible vouching. Regarding the questions posed to Ms. Melfah on cross-examination, it is axiomatic that the prosecutor cannot be faulted for any actions taken there.

Petitioner also complains about testimony given by Dr. Saba Shahid, a psychologist who treated A.S. Petitioner asserts that Dr. Shahid's testimony about A.S.'s mental health "bolster[ed] A.S.'s credibility by suggesting that since A.S. was suffering from these disorders [Posttraumatic Stress Disorder and Disruptive Behavior Disorder], she had been traumatized by the sexual abuse she had suffered" (Pet. at 11). The OCCA found no merit to this claim because Dr. Shahid "did not tell the jury what happened to the child, or whether she believed [Petitioner] was guilty of the crime." Edwards, No. F-2014-1022, slip op. at 4. This is objectively reasonable. As the OCCA found, Dr. Shadid did not vouch for A.S.'s credibility, but merely gave relevant testimony concerning A.S.'s mental health after the disclosure. Petitioner was not denied a fair trial by the admission of this evidence.

Petitioner's final vouching claims concern comments made by the prosecutor during closing argument. Neither comment drew an objection. In first closing argument, the prosecutor stated if the jury believed A.S., then "every element has been met" because the case was all about A.S.'s credibility. In the course of this discussion, the prosecutor stated,

"There is no way that that four-year old child, who is six now, is lying to you," and that the defense was trying to distract the jury "away from what is really at issue . . . that [A.S.] is telling the truth" (J. Tr. IV, 96). In second closing argument, the prosecutor stated that A.S. "had no incentive to lie in April of 2012 . . . And there is no evidence that she has any reason to lie to you today." The prosecutor continued by commenting on the consistency of A.S.'s story (id. at 123).

The OCCA found these comments were "fair comments on the evidence presented." Edwards, No. F-2014-1022, slip op. at 4. The Court agrees. The prosecutor did not make personal assurances of A.S.'s veracity or suggest that information not before the jury supported A.S.'s testimony. Accordingly, no impermissible vouching occurred.

### Sympathy

Petitioner contends that the prosecutor elicited testimony from A.S.'s mother and made comments in closing argument which sought sympathy from the jury. Concerning Mrs. Sing, Petitioner complains about her testimony regarding the behavioral changes in A.S. after the disclosure, including her sexual play, fear of tractors, relationship with her grandmother, and need for counseling (J. Tr. II, 162-67). Petitioner also complains about Mrs. Sing's testimony regarding how the sexual abuse of A.S. has affected her family financially and emotionally (id. at 166-70, 174).

In denying Petitioner relief on this claim, the OCCA held as follows:

The testimony of the victim's mother, describing the emotional and financial strain that the allegations had placed on the family as a whole, was not particularly relevant. However, [Petitioner] did not object at the time, and

we cannot say this testimony was so inflammatory as to have affected the outcome of the trial.

Edwards, No. F-2014-1022, slip op. at 4-5.  Although the OCCA did not specifically address Mrs. Sing's testimony about A.S.'s behavioral changes, there is no question that this evidence was relevant and permissible.[13]  As for Mrs. Sing's additional testimony about the effects of the abuse on her family, the OCCA's determination that this "not particularly relevant" evidence did not affect the outcome of Petitioner's trial is not objectively unreasonable, especially given the strength of the evidence against Petitioner. See Ground Seven, infra (discussing the sufficiency of the evidence).

Regarding closing argument, Petitioner points to four comments which he claims were made by the prosecutor for the purpose of seeking the jury's sympathy.  Two of these comments related to A.S.'s inability to testify at trial.  The prosecutor discussed how A.S. came into court and took the stand but was unable to testify.  The prosecutor asked the jury to recall how difficult it was to watch A.S. "breakdown" (J. Tr. IV, 98-99, 122-23). Defense counsel objected both times and the trial court instructed the prosecutor to move on, but the comments were allowed.  The OCCA found no error: "The jury's ability to observe a witness's demeanor is a fundamental component of the constitutional right to confront one's accusers."  Edwards, No. F-2014-1022, slip op. at 5.  This is reasonable. Much like a comment on the presented evidence, the prosecutor was commenting on

---

[13] The fact that the OCCA did not specifically reference this portion of the claim in its analysis is of no consequence.  See Williams v. Trammell, 782 F.3d 1184, 1201-02 (10th Cir. 2015) (acknowledging the presumption of a merits determination).  But even if the Court were to review the claim de novo, no relief would be warranted as the claim clearly lacks merit.

something the jury witnessed. It was therefore not objectively unreasonable for the OCCA to conclude that there was "nothing improper about it." Id.

Of the two remaining comments, one concerns the effects of the abuse on A.S. (J. Tr. IV, 124). The other was a part of the prosecutor's sentence recommendation to the jury. The prosecutor argued that like "her first dance, her first kiss, her first date," A.S. would always remember that her "first sexual experience came at the hands of [Petitioner]" (id. at 136).[14] No objection was made to either comment. The OCCA denied relief, finding that the prosecutor "asked the jury to punish [Petitioner] for his own conduct and no one else's" and that there was "no misconduct on the part of the prosecutor which was likely to have affected the outcome here." Edwards, No. F-2014-1022, slip op. at 5.

As previously discussed, evidence regarding the changes that A.S. experienced as a result of the abuse was relevant, and as such, the prosecutor was free to discuss it in closing argument. As for the prosecutor's sentence recommendation, it was permissible argument as well. It did not play on the jury's sympathy or seek a sentence based on societal alarm. Accordingly, the OCCA did not unreasonably deny relief on this claim.

### Conclusion

For the foregoing reasons, the Court concludes that Petitioner's Ground Three does not warrant relief. The OCCA reviewed Petitioner's prosecutorial misconduct claims and denied relief on the merits. Reviewing these claims in light of AEDPA deference, the

---

[14] Petitioner argues that this comment also "tr[ied] to create societal alarm" (Pet. at 15).

Court has concluded that the OCCA's denial is not objectively unreasonable. Ground Three is therefore denied.

### C. Ground Four: Right to Present a Defense.

In Ground Four, Petitioner asserts that he was denied his right to present a defense because he was not allowed to present negative propensity evidence. In this regard, Petitioner wanted to present evidence that although he had been around other children for extended periods of time, he did not do anything inappropriate with them. Petitioner also wanted to present evidence regarding his "psychosexual evaluation." In denying relief, the OCCA held as follows:

> [Petitioner] wanted to present testimony that no other children in the family had accused him of molesting them. But in fact, the trial court allowed defense counsel to elicit such testimony, and counsel expressed satisfaction with the court's ruling; several defense witnesses (members of [Petitioner's] side of the family) testified that they were not aware of any inappropriate conduct committed by [Petitioner] with other children in the family. As to the second claim, the proposed testimony of the psychologist, and any opinions he might have been prepared to offer, are completely absent from the record. We simply have no indication what the substance of this testimony would have been. We are therefore unable to evaluate [Petitioner's] complaint. Pierce v. State, 1972 OK CR 82, ¶ 6, 495 P.2d 407, 409.

Edwards, No. F-2014-1022, slip op. at 5-6. This is a reasonable denial.

"The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." Chambers v. Mississippi, 410 U.S. 284, 294 (1973). "The rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process." Id. However, these rights are not absolute. "While the Constitution . . . prohibits the exclusion

of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence . . . ." Holmes v. South Carolina, 547 U.S. 319, 326 (2006). See United States v. Scheffer, 523 U.S. 303, 308 (1998) ("[S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials."); Taylor v. Illinois, 484 U.S. 400, 410 (1988) ("The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.").

Concerning Petitioner's interaction with other children, the OCCA found no error because the trial court allowed Petitioner to present the evidence. While there was some discussion about how the evidence should be presented, defense counsel told the trial court that it was his intention all along to present the evidence in accordance with the trial court's ruling (J. Tr. II, 6-13). The record reflects that five defense witnesses were questioned about their interaction with Petitioner. All testified that Petitioner did nothing inappropriate with them, their children, or with other family members or friends (J. Tr. III, 194, 198-200, 202-03, 207-08, 220-22; J. Tr. IV, 11-12, 17-18). Under these circumstances, where Petitioner was not prevented from presenting the evidence, it was not objectively unreasonable for the OCCA to determine that Petitioner's right to defend himself had not been infringed.

As to the second part of Petitioner's claim relating to a psychosexual evaluation, the OCCA denied relief because the claim was unsupported. Other than listing Dr. Richard Kishur to testify about his forensic examination of Petitioner (O.R. I, 197), the state court

record is silent as to what testimony Dr. Kishur would offer. Without knowledge of the substance of Dr. Kishur's testimony, the OCCA could not evaluate Petitioner's claim. See Pierce, 495 P.2d at 409 (cited by the OCCA in denying relief: "It is incumbent upon the defendant in seeking appeal to bring a sufficient record before the court in order to determine the issues raised."). In accordance with Pinholster, 563 U.S. at 181, when this Court reviews the OCCA's disposition of a claim, it looks to the record that was before the OCCA. In light of the record before the OCCA, or the lack thereof, the Court cannot find fault in the OCCA's disposition of this claim.[15]

Ground Four is denied.

### D.     Ground Five:          Discovery Violation.

In Ground Five, Petitioner claims that a discovery violation denied him due process and the effective assistance of counsel. Specifically, Petitioner complains about his ex-wife's testimony regarding the tractor ride he and A.S. took the day before A.S.'s disclosure. He claims that he was not given notice that his ex-wife (A.S.'s grandmother) would testify that the ride was longer than usual and that she heard the tractor idling. Because he first learned of this information when his ex-wife testified, he claims that his trial counsel "was prevented from preparing fully and effectively"[16] and that he was denied

---

[15] Despite the deficiency noted by the OCCA, Petitioner has made no attempt to shore up this claim nor has he made any assertion that the OCCA overlooked record evidence supporting it.

[16] The extent of Petitioner's ineffective assistance of counsel claim in his Ground Five is the following sentence: "Because the State failed to comply with discovery requirements, the defense was prevented from preparing fully and effectively under the Sixth Amendment and Strickland" (Pet. at 21). Although the Court finds that this scant reference is insufficient to raise an ineffectiveness claim, the Court additionally finds that the claim lacks merit. Petitioner has

due process by the trial court's failure to exclude the evidence or impose sanctions (Pet. at 21).

In denying Petitioner relief, the OCCA held as follows:

> Defense counsel did not object to the new information until he was already cross-examining the witness about it, and impeaching her credibility with the fact that she had suddenly added new facts to her account. The prosecutor explained that she had not received the new information until just a few days before trial. The trial court did not abuse its discretion in denying [Petitioner's] request for a mistrial, and concluding that cross-examination was the best way to handle the matter. The witness's new information was not material to the prosecution or the defense; it neither directly implicated [Petitioner] in the crime nor exonerated him. There was no error here. Stemple v. State, 2000 OK CR 4, ¶¶ 26-27, 994 P.2d 61, 68.

Edwards, No. F-2014-1022, slip op. at 6.  In Stemple, cited by the OCCA in its denial of relief, the OCCA held that "[t]he State is not required to give a script of its case in chief," but a "failure to disclose may be error when [the] evidence is material, would change the theory of the case or would cause the defendant to change his strategy." Stemple, 994 P.2d at 68.

Petitioner's Ground Five is not a Brady[17] claim.  He makes no assertion that the undisclosed evidence is exculpatory, but argues that the evidence should have been disclosed to him pursuant to the Oklahoma Criminal Discovery Code. See Okla. Stat. tit. 22, §§ 2001-2002 (2011).  Because "there is no clearly established constitutional right

---

failed to show that his counsel was ineffective with respect to his handling of this evidence and/or that the trial court's ruling infringed on Petitioner's right to effective representation.

[17] Brady v. Maryland, 373 U.S. 83, 87 (1963) ("[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").

to non-exculpatory discovery," <u>Wilson v. Sirmons</u>, 536 F.3d 1064, 1103 (10th Cir. 2008) (citing <u>Gray v. Netherland</u>, 518 U.S. 152, 167-68 (1996)), the only question here is whether Petitioner was denied a fundamentally fair trial by admission of the evidence. <u>Payne</u>, 501 U.S. at 825.

Petitioner admitted to riding the tractor with A.S. on the day before her disclosure, but denied that he did anything improper to A.S. then or any other time (J. Tr. IV, 37, 57-58). It was therefore of little or no consequence that the tractor idled and that the tractor ride that day was longer than usual. This especially so given that A.S. did not specify when the sexual abuse occurred. <u>See</u> n.7, <u>supra</u>. As the OCCA found, the evidence was not material and defense counsel was able to cross-examine the witness about it (J. Tr. III, 107-08). In addition, Petitioner has not shown what he would have done differently had he known about this testimony prior to trial. Under these circumstances, Petitioner had not shown that he was denied a fundamentally fair trial by the admission of the evidence. Ground Five is therefore denied.

### E.  Ground Six:  Ineffective Assistance of Trial Counsel.

In Ground Six, Petitioner asserts that his trial counsel was ineffective for failing to object to the claims raised in his first three grounds for relief. In denying Petitioner relief on this claim, the OCCA held as follows:

> [Petitioner] faults his trial counsel for not objecting to hearsay evidence and prosecutor misconduct . . . . It is [Petitioner's] burden to show that counsel's acts or omissions (1) were unreasonable under prevailing professional norms, and (2) caused prejudice, *i.e.*, that they undermine confidence in the verdict. <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); <u>Underwood v. State</u>, 2011 OK CR 12, ¶ 77, 252 P.3d 221, 250. Because the hearsay was properly admitted, . . . trial counsel was not

ineffective for failing to object to it. And because the only improper information elicited by the prosecutor (the impact of the case on the victim's family) was not so egregious as to have affected the outcome, . . . [Petitioner] has not demonstrated the necessary prejudice.

Edwards, No. F-2014-1022, slip op. at 6-7.

Whether counsel has provided constitutional assistance is a question to be reviewed under the familiar standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), which the OCCA did in Petitioner's case. To obtain relief, Strickland requires Petitioner to show not only that his counsel performed deficiently, but that he was prejudiced by it. Id. at 687. Prejudice "is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

"[W]hen a [petitioner] fails to show that a trial court's admission of evidence was improper for some reason, it likely follows that the lawyer did not perform deficiently by failing to object to its admission." Williams v. Trammell, 782 F.3d 1184, 1198 (10th Cir. 2015). This was the OCCA's conclusion with respect to Petitioner's Grounds One and Two. Having reviewed those grounds as well and concluded that the OCCA was objectively unreasonable in its denial of relief, the Court additionally concludes that the OCCA was not objectively unreasonable in denying relief on the corresponding ineffective assistance of counsel claim.

With respect to his Ground Three, Petitioner faults his counsel for not objecting to the testimony of Ms. Donaldson, Ms. Melfah, and Dr. Shahid on grounds of improper vouching and to the testimony of Mrs. Sing on grounds of sympathy (Pet. at 23). However, with the exception of Mrs. Sing's testimony about the effect of A.S.'s abuse on her family,

the OCCA found no error in the testimony of these witnesses. Because there was no error in these underlying claims, counsel cannot be deemed ineffective with respect to them. See Freeman v. Atty. Gen., 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim . . . ."). As for the portion of Mrs. Sing's testimony that the OCCA did find improper, the OCCA concluded that counsel was not ineffective here either. Because Strickland requires both deficient performance and prejudice, and because the OCCA had previously concluded that the testimony did not affect the outcome of Petitioner's trial, it was not objectively unreasonable for the OCCA to additionally conclude that Petitioner could not establish the prejudice required by Strickland to obtain relief.

Ground Six is denied.

**F.     Ground Seven:     Insufficient Evidence.**

In Ground Seven, Petitioner asserts that the evidence is insufficient to support his convictions. In support of his claim, Petitioner cites to the lack of physical evidence and the inconsistencies in A.S.'s statements. In denying Petitioner relief on this claim, the OCCA held as follows:

> [T]he victim, a child of four at the time, spontaneously and innocently described, to her mother, conduct with her step-grandfather that was unmistakably sexual in nature. She gave fairly consistent accounts of the same conduct on other occasions. The child also exhibited disturbing behavioral changes that a reasonable person could find to be corroborative of her claims. The evidence is sufficient to support the jury's verdict. Wood v. State, 2007 OK CR 17, ¶ 8, 158 P.3d 467, 472; Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

Edwards, No. F-2014-1022, slip op. at 7.

Jackson v. Virginia, 443 U.S. 307, 319 (1979), which the OCCA applied in this case, sets forth the familiar standard of review for sufficiency of the evidence claims: "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." As the Jackson Court noted,

> [t]his familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon "jury" discretion only to the extent necessary to guarantee the fundamental protection of due process of law.

Id. (footnotes omitted). Judicial review, therefore, is "'sharply limited'" and a reviewing court "must accept the jury's determination as long as it is within the bounds of reason." Boltz v. Mullin, 415 F.3d 1215, 1232 (10th Cir. 2005) (citations omitted). "[T]he Jackson inquiry does not focus on whether the trier of fact made the *correct* guilt . . . determination, but rather whether it made a *rational* decision to convict . . . ." Herrera v. Collins, 506 U.S. 390, 402 (1993). See also Jackson, 443 U.S. at 318-19 (the question is not whether the reviewing court itself believes that the evidence is sufficient to establish a defendant's guilt beyond a reasonable doubt). Thus, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Jackson, 443 U.S. at 326.

In addition to the deference afforded a jury's verdict by <u>Jackson</u>, the AEDPA adds another layer of deference to the court's review of a sufficiency claim.

> The opinion of the Court in <u>Jackson</u> . . . makes clear that it is the responsibility of the jury–not the court–to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was "objectively unreasonable."

<u>Cavazos v. Smith</u>, 565 U.S. 1, 2 (2011) (per curiam) (citation omitted).  <u>See</u> <u>also</u> <u>Parker v. Matthews</u>, 567 U.S. 37, 43 (2012) (referring to habeas review of sufficiency claims as a "twice-deferential standard"); <u>Coleman v. Johnson</u>, 566 U.S. 650, 651 (2012) (per curiam) (noting that <u>Jackson</u> claims "are subject to two layers of judicial deference").

The OCCA's finding of sufficient evidence is undoubtedly a reasonable determination, especially in light of the double deference afforded it. As the presented evidence has already been discussed in detail, it need not be repeated here.  Sufficed to say, A.S.'s spontaneous disclosure to her mother and A.S's videotaped interview to Ms. Melfah are of such significance that they alone provide ample support for Petitioner's convictions. The terms which A.S. used to explain what Petitioner did to her were both childlike and vivid.   A.S's description of semen as "snot" coming from Petitioner's "bottom" is confirmation of the sexual acts she experienced, as is her reenactment of Petitioner licking her "bottom" when she plays with her dolls.  Petitioner's Ground Seven has no merit and is denied.

**G. Ground Eight: Cumulative Error.**

In his Ground Eight, Petitioner seeks relief based upon a cumulative error theory. "A cumulative-error analysis . . . aggregates all the errors that individually have been found to be harmless . . . and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." <u>Rivera</u>, 900 F.2d at 1470. A petitioner has no basis for cumulative error relief in the absence of two or more errors. <u>Hanson</u>, 797 F.3d at 852. No error was found by the OCCA or by this Court. Accordingly, Petitioner's Ground Eight presents no basis for relief and is therefore denied.

## IV. Conclusion.

Having concluded that Petitioner's arguments do not establish a right to relief, his petition for writ of habeas corpus (Doc. 1) is **DENIED**. A certificate of appealability is also **DENIED**. Judgment will enter accordingly.

IT IS SO ORDERED this 12th day of February, 2018.


VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE